# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| TFG-NORTH CAROLINA, a Utah Limited Liability Partnership,<br><br>Plaintiff,<br><br>v.<br><br>PERFORMANCE FIBERS, a Delaware corporation, and PERFORMANCE FIBERS HOLDINGS, a Delaware corporation,<br><br>Defendants. | **MEMORANDUM DECISION and ORDER**<br><br>Case No. 2:08-cv-00942-TC-DN<br><br>Judge Tena Campbell |

Plaintiff and Counterclaim-Defendant TFG-North Carolina (TFG) agreed to purchase the implementation costs associated with a software upgrade from Performance Fibers, Inc., for approximately $3.2 million dollars and to lease these costs back to Performance Fibers under a two-year lease for $144,257 per month. The Master Lease Agreement, which spelled out the terms of the agreement, required Performance Fibers to notify TFG within 180 days of the end of the base term of the agreement whether it wanted to purchase the implementation costs at a price to be negotiated or extend the lease for an additional twelve month period. Performance Fibers did not notify TFG of which option it chose, and TFG extended the agreement for an additional twelve months. Performance Fibers quit making payments under the agreement after two years.

TFG brought three claims: (1) Breach of contract against Performance Fibers; (2) Breach of guaranty against Performance Fibers Holdings; and (3) Writ of Replevin for the return of the leased property. Performance Fibers brought four counterclaims: (1) Declaratory judgement against all counterclaim Defendants that the Master Lease Agreement and related documents are unenforceable and that Performance Fibers owes no further obligation to TFG; (2) Breach of

contract against all counterclaim Defendants; (3) Conversion against all counterclaim Defendants; and (4) Unjust enrichment against Tetra Financial Group. The parties now bring cross motions for summary judgment on all claims.

Because there are material issues of fact about the parties' intent concerning the end of the agreement, the court denies both motions for summary judgment.

ANALYSIS[1]

TFG argues that the Performance Fibers' compliance with the end of lease term of the Master Lease Agreement is a simple matter of enforcing the plain provisions of the contract. Performance Fibers argues that the Master Lease Agreement is invalid because it is not supported by consideration, is a sham agreement that does not reflect the parties' true intent, is void for illegality because it is structured as a lease so TFG could take unwarranted deductions on its tax returns, and is unconscionable because at the end of the lease Performance Fibers had no meaningful choice.

### Fictitious Consideration

Performance Fibers maintains that the Master Lease Agreement is void for lack of consideration because it falsely states that rent was paid in return for the use of property that did not exist. "Consideration sufficient to support the formation of a contract requires that 'a performance or a return promise must be bargained for.'" Aquagen Int'l, Inc. v. Calrae Trust, 972 P.2d 411, 413 (Utah 1998) (quoting Restatement (Second) Contracts, § 71 (1981)). "An illusory promise . . . affords no consideration to the promisee." Flood v. Clearone Comm'n, Inc., 618 F.3d 1110, 1119 (10th Cir. 2010) (interpreting Utah law). Performance Fibers argues that there

---

[1] A detailed recitation of the facts is not necessary to rule on these motions.

was no consideration because no property was actually leased. But here Performance Fibers' use of the money it previously spent on implementation costs was not false or illusory. Therefore, the consideration was not fictitious.

Illegality

Performance Fibers argues that the Master Lease Agreement is illegal because it was structured as a lease agreement in order to confer undeserved tax benefits on TFG. TFG counters that whether or not it receives tax benefits from the lease is immaterial to the lease's validity as a contract.

"An illegal contract is a promise that is prohibited because the performance, formation, or object of the agreement is against the law." 17A Am. Jur. 2d Contracts § 223. "[T]he fact that a contract serves a prohibited purpose does not necessarily make the contract unenforceable." Peterson v. Sunrider Corp., 2002 UT 43 ¶ 39, 48 P.3d 918. But if enforcement of a contract would compel a party to break the law, the contract is void for illegality. Id. ¶ 40. The Seventh Circuit held that even though a sale-and-leaseback provision was obviously structured to confer tax benefits with no other economic purpose, it was still enforceable because compliance with the contract did not force either party to violate the law. Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Ins. Co., 582 F.3d 721, 726 (7th Cir. 2009) (holding that "New York law is skeptical of contentions that irregular dealings between one contracting party and the government excuse the other contracting party's performance").

Here, Performance Fibers claims that TFG structured the loan as a lease in order to obtain an illegal tax deduction. Even if this is so, Performance Fibers does not have to break the law in order to comply with the terms of the contract. Further, unlike Hoosier Energy, the lease in this

3

case conferred an economic benefit to Performance Fibers in the form of a loan of funds in addition to any tax benefits TFG gained from the transaction. For those reasons, the Master Lease Agreement is not void for illegality.

Substantive Unconscionability

Performance Fibers contends that the end of lease provision in the Master Lease Provision is substantively unconscionable because it does not afford Performance Fibers a meaningful choice at the end of the lease term. See Res. Mgmt. Co. v. Weston Ranch, 706 P.2d 1028, 1043 (Utah 1985). But Performance Fibers has a heavy burden to prove unconscionability. See Ryan v. Dan's Food Stores, Inc., 972 P.2d 395, 402 (Utah 1998). In the absence of unconscionability in the formation of the contract, the court will only hold that a contract is unconscionable if there is a gross disparity in the terms of the contract. Sosa v. Paulos, 924 P.2d 357, 361 (Utah 1996). To determine substantive unconscionability, the court looks at the terms of the contract in the light of the circumstances that existed at the time of contract formation and according to the mores and business practices of the time and place. Res. Mgmt., 706 P.2d at 1043-44. "Even if a contract term is unreasonable or more advantageous to one party, the contract, without more, is not unconscionable – the terms must be so one-sided as to oppress an innocent party." Ryan, 972 P.2d at 402; see also Sosa, 924 P.2d at 362 ("[A] showing of substantive unconscionability requires evidence that a term is so one-sided as to oppress or unfairly surprise an innocent party.") . Whether a contract is unconscionable is a legal question for the court to decide. Id. at 360.

At the time TFG and Performance Fibers entered into the Master Lease Agreement, Performance Fibers needed money. In executing the agreement, Performance Fibers consulted

with outside counsel concerning the substance of the agreement and based on the advice of counsel went so far as to require that the end of lease provision that it now claims is unconscionable be modified. The terms of such a negotiated provision cannot now be considered a one-sided surprise that oppresses Performance Fibers. To hold this provision unconscionable would undermine the parties' right "to contract on their own terms without the intervention of the courts for the purpose of relieving one side or the other from the effects of a bad bargain." Res.Mgmt., 706 P.2d at 1040. Therefore, the court concludes that the end of lease provision in the Master Lease Agreement is not unconscionable.

Sham Agreement

Performance Fibers argues that the Master Lease Agreement is a sham agreement masking the true intent of the parties and that it is therefore unenforceable. Performance Fibers seems to also take the position that the sham nature of the agreement is so clear that the court can hold, as a matter of law, that Performance Fibers had fulfilled the terms of the parties' real agreement when it ceased making payments in July 2008.

Although Performance Fibers points to some provisions in the Master Lease Agreement that may be inapplicable to the agreement between the parties, such provisions do not render the entire contract unenforceable as a sham agreement under Utah law. Both parties treated this agreement as a lease for tax purposes, and Thomas Gebbia, the chief financial officer of Performance Fibers, testified that he intended to perform under the terms of the agreement. The Master Lease Agreement did not mask the true intent of the parties and is not a sham agreement.

But even if the Master Lease Agreement is a valid contract, the inapplicable provisions may indicate that it does not accurately represent the entire intent of the parties. The Master

5

Lease Agreement states that "This Master Lease and all Schedules duly executed and attached hereto from time to time constitute the entire agreement between the parties hereto with respect to the Equipment." (Master Lease Agreement ¶ 19(a), attached as Ex. J to TFG's Mem. in Supp. of Mot. for Summ. J.)  This integration clause would normally prevent the court from considering parol evidence about the parties' intent.  But Performance Fibers has put forth sufficient evidence of ambiguity and inconstancy in the agreement to require the court to consider parol evidence.

"[I]f a contract is integrated, parol evidence is admissible only to clarify ambiguous terms; it is not admissible to vary or contradict the clear and unambiguous terms of the contract. Tangren Family Trust v. Tangren, 2008 UT 20, ¶ 11, 182 P.3d 326.  "A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." Daines v. Vincent, 2008 UT 51, ¶25, 190 P.3d 1269 (quotations omitted).  To determine whether a contract is ambiguous, the court should consider "evidence of the facts known to the parties at the time they entered the agreement." Peterson v. Sunrider Corp., 2002 UT 43, ¶ 19, 48 P.3d 918.  But the court should not "allow surrounding circumstances to create ambiguity where the language of a contract would not otherwise permit." Daines, 2008 UT 51, ¶ 27.  Further, the interpretations contended for by the parties must be reasonably supported by the language of the contract. Peterson, 2002 UT 43, ¶ 19.  The court can conclude that a contract is ambiguous either due to a specific ambiguous provision or in a contract taken as a whole. Daines, 2008 UT 51, ¶ 29. Whether a contract is facially ambiguous is a question of law that may trigger a factual question about the intent of the parties. Daines, 2008 UT ¶ 25.

In this case, it is unclear whether the parties intended the Master Lease Agreement to be a loan or a lease. Although the terms of the end of lease provision are clear, when the Master Lease Agreement is considered as a whole it is not clear whether any property was actually leased and whether the parties intended that the provisions that applied to the lease of property apply to the agreement between the parties. Performance Fibers' theory that the Master Lease Agreement was actually a loan is supported by the several provisions in the agreement that seem to inapplicable to the lease of costs, such as provisions that

- disclaim liability on TFG's part for defects in the implementation costs incurred by Performance Fibers (Master Lease Agreement ¶ 9(b), attached as Ex. J to TFG's Mem. in Supp. of Mot. for Summ. J.);
- give TFG the right to repossess the costs Performance Fibers had incurred for Adjoined Consulting's implementation services in the event Performance Fibers defaults on its obligations under the Lease (Id. ¶ 16(a)(11));
- entitle TFG to recover the "Casualty Loss Value" of those costs. (Id.);
- entitle TFG to inspect Performance Fiber's records regarding the "use, maintenance and repair" of the costs Performance Fibers previously incurred for Adjoined Consulting's services (Id. ¶ 8(d));
- require Performance Fibers to notify TFG of "all seizure, attachment or judicial process, affecting or relating to the use, maintenance, operation, possession, lease or ownership of" the cost of Adjoined's services (Id.); and
- require Performance Fibers to certify that implementation costs have been "delivered" to Performance Fibers, are of the proper "size, design, capacity and manufacture," and have been "inspected" (Id. ¶ 2(a));

Moreover, although the agreement is not unconscionable, the imbalance of terms between the parties lends further support to Performance Fibers' argument that the Master Lease Agreement was not a lease at all and that the end of lease provision should not apply to the agreement. On the other hand, both parties treated this agreement as a lease for tax purposes. Thomas Gebbia, the chief financial officer of Performance Fibers, testified that he intended to perform under the terms of the lease. Further, the end of lease provision was modified through the negotiation of

7

the parties. Therefore, there is a question of fact about whether the parties intended the end of lease provision to apply to their agreement.

ORDER

The court DENIES TFG's motion for summary judgment. The court GRANTS in part and DENIES in Performance Fibers' motion for summary judgment. Specifically, the court holds that the Master Lease Agreement is not void for lack of consideration, illegality, or unconscionability. But because there are disputed facts about what the parties intended to occur at the conclusion of the base term of the Master Lease Agreement, the court denies summary judgment on that issue.

DATED this 3rd day of January, 2011.

BY THE COURT:

_____
TENA CAMPBELL
Chief Judge